UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CRYSTAL M. WILLIAMS,                    )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        No.  4:13CV395 TIA
                                        )
CAROLYN W. COLVIN, Acting               )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the Commissioner's final decision denying Crystal M. Williams'

application for disability insurance benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401, *et seq.*, and application for supplemental security income

under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are pending

before the undersigned United States Magistrate Judge, with consent of the parties,

pursuant to 28 U.S.C. § 636(c).  Because the Commissioner's final decision is

supported by substantial evidence on the record as a whole, it is affirmed.

### I.  Procedural History

On January 13, 2011, the Social Security Administration denied plaintiff

Crystal M. Williams' September 2010 applications for disability insurance benefits

(DIB) and supplemental security income (SSI), in which she claimed she became disabled on October 31, 2008, because of back and leg problems, depression, and anxiety. (Tr. 32, 33, 70-74, 75-79, 115-21, 187.)[1]/[2]  Upon plaintiff's request, a hearing was held before an administrative law judge (ALJ) on November 3, 2011, at which plaintiff and a vocational expert testified. (Tr. 533-53.) On January 12, 2012, the ALJ issued a decision denying plaintiff's claims for benefits, finding plaintiff able to perform her past relevant work as a cook, deli/ bakery worker, cashier, factory worker, and house cleaner. Alternatively, the ALJ found plaintiff able to perform other work in the national economy, such as assembly worker and dishwasher/kitchen helper. (Tr. 7-23.) On January 18, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-5.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, plaintiff contends that the ALJ's decision is not supported by substantial evidence on the record as a whole inasmuch as the ALJ failed to include all of plaintiff's mental limitations in her

---

[1]  Plaintiff previously filed applications for DIB and SSI benefits, which were denied on November 25, 2009, and on September 15, 2009, respectively. (*See* Tr. 10.) Plaintiff does not challenge the ALJ's determination here not to reopen these applications.

[2]  Although the administrative transcript contains copies of the Social Security Administration's rulings on plaintiff's application for SSI benefits, the transcript does not contain a copy of the application for SSI benefits itself.

determination of plaintiff's residual functional capacity (RFC). Plaintiff argues

that the failure to include such limitations resulted from the ALJ's failure to accord

proper weight to the opinions of plaintiff's treating psychiatrist, Dr. Ahmed.

Plaintiff also claims that despite finding plaintiff to have moderate limitations as to

concentration, persistence, and pace, the ALJ failed to include these limitations in

the RFC. Finally, plaintiff argues that the ALJ erred in her determination that

plaintiff could perform her past relevant work. Plaintiff requests that the final

decision be reversed and that she be awarded benefits, or that the matter be

remanded for further consideration.

## II. Testimonial Evidence Before the ALJ

A.    <u>Plaintiff's Testimony</u>

At the hearing on November 3, 2011, plaintiff testified in response to

questions posed by the ALJ.

At the time of the hearing, plaintiff was fifty years of age. Plaintiff lives in a

house with her husband who works full time in the evenings. Plaintiff has a

twelfth grade education with no additional vocational or technical training. (Tr.

536-37.)

Plaintiff's Work History Report shows that plaintiff worked as a house

cleaner for a janitorial service in 1997. In 1998, plaintiff worked in the deli

department at a grocery store. From 1996 through 2008, plaintiff worked

intermittently as a cook.  In 2009, plaintiff worked for one day as a cashier in a grocery store.  (Tr. 155, 188.)  Plaintiff testified that she also worked in the past as a factory worker.  (Tr. 546-47.)

Plaintiff testified that she previously received unemployment compensation, which ended the previous month.  Plaintiff testified that she applied for and received unemployment compensation because her husband was not working at the time, they lost their house and lived in a recreational vehicle at her brother's house for over one year, and they had no other source of income.  (Tr. 537-38.)  At different points in the hearing, plaintiff testified that she previously looked for work as a cook, daycare worker, and cashier in relation to her receipt of unemployment benefits.  (Tr. 537.)  At other points in the hearing, plaintiff testified that she never looked for any work.  (Tr. 537, 541.)  When asked, plaintiff had no explanation for her inconsistent testimony.  (Tr. 538, 541.)

Given the inconsistency in plaintiff's testimony, the ALJ determined not to take additional testimony from the plaintiff.  (Tr. 543.)

B.    Vocational Expert Testimony

Dr. Gerald Belchick, a vocational expert, testified at the hearing in response to questions posed by the ALJ and counsel.

Dr. Belchick characterized plaintiff's past work as a cook as skilled and light to medium; as a deli/bakery worker as skilled and light; as a cashier as semi-skilled

and light; and as a house cleaner and factory worker as unskilled and light. (Tr. 547-49.)

The ALJ asked Dr. Belchick to assume an individual limited to light and unskilled work. Dr. Belchick testified that such a person could perform plaintiff's past work as a house cleaner and factory worker. Dr. Belchick testified that such a person could perform other work such as dishwasher, of which 2,000 such jobs existed in the St. Louis area and 98,000 nationally; and assembler, of which 2,300 such jobs existed in the St. Louis area and 350,000 nationally. (Tr. 549-50.)

Counsel then asked Dr. Belchick to assume an individual who would be off task ten to fifteen percent of the time because of an inability to maintain concentration and remain task-focused. Dr. Belchick testified that any percentage above ten percent is problematic, especially at the unskilled level, and would be detrimental to successful work. (Tr. 551-52.)

### III. Medical Records Before the ALJ[3]

On June 3, 2008, plaintiff visited Dr. Malik Ahmed with complaints of depression and anxiety. Plaintiff reported that she had been taking Paxil for four months and that the medication helped calm her in that she was no longer angry or

---

[3] The undersigned has reviewed the entirety of the administrative record in determining whether the Commissioner's adverse decision is supported by substantial evidence. However, inasmuch as plaintiff challenges the decision only as it relates to her mental impairments and not as it relates to any physical impairment, the recitation of specific evidence in this Memorandum and Order is limited to only that evidence relating to the issues raised by plaintiff on this appeal.

upset.  Plaintiff also reported not worrying as much.  Plaintiff reported her memory and concentration to be good.  Mental status examination showed plaintiff to be oriented times three, pleasant, and in mild distress.  Plaintiff's mood was noted to be good and her affect full.  Dr. Ahmed noted plaintiff's memory and concentration to be fair, as well as her insight and judgment.  Dr. Ahmed diagnosed plaintiff with generalized anxiety disorder (GAD) and depressive disorder, not otherwise specified, and assigned a Global Assessment of Functioning (GAF) score of 65.[4]  Plaintiff was instructed to continue with Paxil. (Tr. 342-44.)

Plaintiff returned to Dr. Ahmed on July 15, 2008, and reported that she quit her job and was looking for new work.  Plaintiff reported that she was not worrying and was staying active.  Mental status examination was normal.  Dr. Ahmed reported no change in plaintiff's condition, and plaintiff was continued on Paxil.  (Tr. 339-40.)

On September 9, 2008, plaintiff reported to Dr. Ahmed that she felt anxious about her new job at a factory in that a co-worker created a lot of stress for her.

---

[4]  A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness."  *Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34* (4th ed. 2000).  A GAF score of 61 to 70 indicates some mild symptoms (*e.g.,* depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

Mental status examination showed plaintiff to have an anxious affect but was otherwise normal. Plaintiff was continued on Paxil. (Tr. 336-37.) On November 11, 2008, Dr. Ahmed increased plaintiff's dosage of Paxil due to increased anxiety. Plaintiff reported that she was laid off from the factory and was now working at a hot dog stand. Dr. Ahmed noted plaintiff's affect to be anxious but that her mental status was otherwise normal. (Tr. 333-34.)

Plaintiff visited Dr. Ahmed on March 3, 2009, and reported that she felt moderately depressed and was slightly irritable. Plaintiff reported that her husband lost his job and that they no longer had insurance. Plaintiff reported that she had been seeing her primary care physician for hypertension and chronic pain. Mental status examination showed plaintiff to have a depressed mood and anxious affect. Plaintiff's flow of thought was noted to be logical. Dr. Ahmed continued in his diagnoses of GAD and depressive disorder and instructed plaintiff to continue on her current dosage of Paxil. (Tr. 330-31.)

Plaintiff visited Dr. Eric Matlock at the McAuley Clinic on March 26, 2009, to establish medical care. Dr. Matlock noted plaintiff's history of anxiety in relation to which plaintiff denied any excessive crying, any persistent feeling of sadness and hopelessness, or any fatigue. Dr. Matlock determined the condition to be stable. (Tr. 325-29.)

Plaintiff returned to Dr. Ahmed on April 14, 2009, and reported feeling moderately depressed and irritable. Plaintiff also reported having feelings of worthlessness and guilt. Plaintiff reported her concentration to be slightly decreased. Plaintiff reported that her husband continued to be without work, was looking for a job, and was going to apply for social security inasmuch as he had many medical problems. Plaintiff reported that she was having more good days and that her anxiety was good inasmuch as she was mostly at home. Mental status examination showed plaintiff to have a depressed mood and an anxious affect but was otherwise normal. Dr. Ahmed continued in his diagnoses and instructed plaintiff to increase her dosage of Paxil. (Tr. 317-18.) Plaintiff reported to Dr. Ahmed on June 16, 2009, that she was good and that the increased dosage of Paxil was helping. Plaintiff reported decreased anxiety and that she kept active by working in her yard and riding her bike. Plaintiff reported that her husband found a job and that they were doing okay financially. Plaintiff was continued on her current dosage of Paxil. (Tr. 307-08.)

Plaintiff visited the McAuley Clinic at St. John's Mercy Medical Center on September 9, 2009, for follow up of her physical conditions. With respect to her anxiety, plaintiff reported that she was coping well and was tolerating her medication. Plaintiff reported that she was mildly anxious. Plaintiff's mood,

affect, and behavior were noted to be normal. Plaintiff's prescription for Paxil was refilled. (Tr. 285-86.)

Plaintiff returned to Dr. Ahmed on January 26, 2010. Plaintiff reported that she had not visited him since June 2009 because she was busy. Plaintiff reported that Paxil sometimes helped with her anxiety and that her depression was better. Plaintiff reported having problems with increased pain. Plaintiff reported having feelings of worthlessness and guilt with slight irritability. Plaintiff also reported being moderately fatigued. Plaintiff reported her concentration to be normal. Mental status examination showed plaintiff's mood to be depressed and her affect anxious. Plaintiff's flow of thought was noted to be logical, and her insight and judgment were noted to be fair. Dr. Ahmed diagnosed plaintiff with GAD and major depression and instructed plaintiff to continue with Paxil. (Tr. 261-63.)

Plaintiff returned to Dr. Ahmed on March 23, 2010, and reported that she was good. Plaintiff reported that she kept busy working in the yard and doing crossword puzzles. Plaintiff reported not keeping her medical appointments because of the hassle and the associated cost, which caused financial stress. Plaintiff reported that her husband's claim for disability was denied and that he was now looking for a job. Dr. Ahmed noted plaintiff's mood to be depressed and her affect flat. Plaintiff was continued in her diagnoses and medication. (Tr. 255-57.)

Plaintiff visited Dr. Ahmed on June 29, 2010, and reported that they lost their house to foreclosure and that they were now living with their daughter. Plaintiff reported that she had an upcoming appointment to receive injections for pain and that she would be able to work if the injections provided relief. Plaintiff reported that she applied for disability, but that her applications were denied. Plaintiff reported feeling depressed and irritable with feelings of worthlessness and guilt. Plaintiff reported a decrease in her concentration. Mental status examination showed plaintiff's mood to be depressed and nervous with an anxious affect. Plaintiff's flow of thought was logical, and her insight and judgment were noted to be fair. Plaintiff was instructed to continue with Paxil, and Trazodone was prescribed for sleep. (Tr. 242-44.)

On August 24, 2010, plaintiff reported to Dr. Ahmed that her pain injections provided little relief and that she was unable to work. Plaintiff reported that she continued to live with her daughter and that her husband had returned to work. Plaintiff reported that spending time with her one-and-a-half-year-old granddaughter kept her busy during the day. Mental status examination showed plaintiff's mood to be depressed and her affect anxious but was otherwise normal. Dr. Ahmed determined to increase plaintiff's dosage of Trazodone. (Tr. 231-33.)

Plaintiff visited Dr. Ahmed on October 26, 2010, and reported that she was now living in a friend's basement and that the arrangements were okay. Plaintiff

reported sleeping a lot and not engaging in much activity. Plaintiff reported feeling depressed and irritable and having decreased concentration. Mental status examination was unchanged from the last visit. Dr. Ahmed determined to add Buspar to plaintiff's medication regimen, and plaintiff was instructed to continue with Paxil and Trazodone. (Tr. 480-82.)

On November 30, 2010, plaintiff reported to Dr. Ahmed that she had crying spells, low energy, low motivation, and trouble with concentrating and making decisions. Plaintiff also reported feeling anxious and panicky and that she had been worrying a lot. Mental status examination showed plaintiff's speech and motor activity to be slowed. Plaintiff's mood was noted to be depressed and her affect anxious. Plaintiff's flow of thought was logical, and her insight and judgment were noted to be fair. Dr. Ahmed continued in his diagnoses of GAD and major depressive disorder and instructed plaintiff to increase her dosage of Buspar. (Tr. 459-61.)

On November 30, 2010, Dr. Ahmed completed a Mental Medical Source Statement (Mental MSS) wherein he opined that plaintiff suffered marked limitations in activities of daily living, and specifically, in her abilities to cope with normal work stress, function independently, behave in an emotionally stable manner, and maintain reliability. With respect to social functioning, Dr. Ahmed opined that plaintiff had moderate limitations in her ability to relate in social

situations and was markedly limited in her abilities to interact with the general public, accept instructions and respond to criticism, and maintain socially acceptable behavior. With respect to plaintiff's concentration, persistence, or pace, Dr. Ahmed opined that plaintiff was moderately limited in her abilities to understand and remember simple instructions and to make simple work-related decisions; markedly limited in her ability to maintain regular attendance and be punctual; and extremely limited in her abilities to complete a normal workday and workweek without interruptions from symptoms, to maintain attention and concentration for extended periods, to perform at a consistent pace without an unreasonable number and length of rest periods, to sustain an ordinary routine without special supervision, to respond to changes in a work setting, and to work in coordination with others. Dr. Ahmed reported that plaintiff experienced four or more episodes of decompensation within the past year that lasted at least two weeks. Dr. Ahmed opined that plaintiff had a substantial loss of ability to understand, remember, and carry out simple instructions; to make judgments that are commensurate with the functions of unskilled work; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. Dr. Ahmed reported that plaintiff had experienced the severity of such reported limitations for two to three years. Dr. Ahmed reported

plaintiff's GAF to be 50.[5]  (Tr. 350-53.)  In conclusion, Dr. Ahmed stated that plaintiff had "ongoing problems [with] anxiety, depression, complicated by her physical problems.  She feels tired.  Has no motivation.  Has trouble doing her [activities of daily living].  Forgetful.  Poss[ible] short-term memory.  She's anxious and irritable around too many people."  (Tr. 353.)

On December 21, 2010, plaintiff underwent a consultative psychological evaluation for disability determinations.  Plaintiff reported having feelings of depression for three years and that she currently cried a lot and spends time by herself watching television or sitting in the dark.  Plaintiff reported having depressive symptoms all day, seven days a week.  Plaintiff reported that she felt like a failure and had difficulty handling stressful situations.  Plaintiff reported having difficulty with sleep.  Plaintiff reported being suspicious that people were out to harm or hurt her.  Plaintiff reported seeing shadows when nothing is there and that she smells coffee when nothing is producing the smell.  Plaintiff reported having thoughts of harming others.  As to her anxiety, plaintiff reported having panic attacks about once a week.  Plaintiff reported that she has to keep things in order and does not like things out of place, and that she constantly washes her hands.  Dr. Summer D. Johnson noted plaintiff's past history relating to her

_____

[5]  A GAF score of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school

physical and mental impairments.  Mental status examination showed plaintiff to be fully oriented and to have a positive attitude with good eye contact.  Plaintiff's motor activity was within normal limits.  Dr. Johnson noted plaintiff to be able to engage spontaneously and to be coherent, relevant, and logical.  Plaintiff's stream of speech and mental activity was unremarkable.  Plaintiff's mood was noted to be down with a flat affect.  Plaintiff's thought content showed no evidence of preoccupation, thought disturbances, perceptional distortions, delusions, or suicidal ideations.  Dr. Johnson noted plaintiff to be possibly experiencing hallucinations. Plaintiff had no difficulties with remote memory but had some slight difficulties with immediate memory and some problems with concentration.  Dr. Johnson noted plaintiff's proverb interpretation to be poor and her judgment to be fair.  As to current level of daily functioning, Dr. Johnson noted plaintiff to report that she lives with her husband in a friend's basement, pays her own bills, cooks, completes household chores, and goes grocery shopping.  Plaintiff reported that she sometimes reads and goes out to eat.  Plaintiff reported that she did not get along well with others, and her daughter shared her thoughts that stress and irritability because of pain may be contributing factors.  Dr. Johnson noted that, during the examination, plaintiff demonstrated fair concentration, good persistence, and a moderately slow pace.  Dr. Johnson diagnosed plaintiff with GAD and major

functioning (*e.g.*, no friends, unable to keep a job).

depressive disorder-recurrent-moderate and opined that plaintiff was likely experiencing some problems with mood and anxiety. Dr. Johnson assigned a GAF score of 60.[6] (Tr. 354-59.)

Plaintiff returned to Dr. Ahmed on January 4, 2011, and reported increased stress because of financial issues. Mental status examination showed plaintiff's speech and motor activity to be normal. Plaintiff's flow of thought was noted to be logical, and her insight and judgment were fair. Plaintiff had a depressed mood and anxious affect. Dr. Ahmed determined to switch plaintiff from Paxil to Celexa because of weight gain. (Tr. 436-38.)

On January 31, 2011, Kyle DeVore Ph.D., completed a Psychiatric Review Technique Form for disability determinations in which he opined that plaintiff's major depressive disorder and GAD caused plaintiff to have mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and to result in no repeated episodes of decompensation of extended duration. Upon review of the evidence of record, Dr. DeVore opined that plaintiff was capable of simple tasks and would benefit from limited interaction with others. (Tr. 360-71.) In a Mental

---

[6] A GAF score of 51 to 60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).

RFC Assessment completed that same date, Dr. DeVore opined that, in the domain of Understanding and Memory, plaintiff was moderately limited in her ability to understand and remember detailed instructions, but was otherwise not significantly limited. In the domain of Sustained Concentration and Persistence, Dr. DeVore opined that plaintiff was moderately limited in her abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. DeVore opined that plaintiff experienced no other significant limitations in this domain. As to the domain of Social Interaction, Dr. DeVore opined that plaintiff was moderately limited in her abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Otherwise, Dr. DeVore opined that plaintiff was not significantly limited. Finally, in the domain of Adaptation, Dr. DeVore opined that plaintiff was moderately limited in her abilities to respond appropriately to changes in the work setting and to travel in unfamiliar places or use public transportation. Otherwise, Dr. DeVore opined that plaintiff was not significantly limited. Dr. DeVore concluded that

plaintiff retained the ability to perform simple tasks with minimal interaction from peers and the public. (Tr. 372-74.)

On February 22, 2011, Dr. Ahmed determined to increase plaintiff's dosage of Buspar because of increased anxiety and irritability. (Tr. 429-31.) No change was made during a follow up appointment on April 26, 2011. (Tr. 422-24.)

On June 14, 2011, Dr. Ahmed completed a second Mental MSS wherein he opined that plaintiff suffered marked limitations in activities of daily living, and specifically, in her abilities to cope with normal work stress, function independently, and maintain reliability. Dr. Ahmed opined that plaintiff suffered extreme limitations in her ability to behave in an emotionally stable manner. With respect to social functioning, Dr. Ahmed opined that plaintiff had moderate limitations in her ability to relate in social situations; marked limitations in her abilities to interact with the general public, accept instructions, and respond to criticism; and extreme limitations in her ability to maintain socially acceptable behavior. With respect to plaintiff's concentration, persistence, or pace, Dr. Ahmed opined that plaintiff was moderately limited in her ability to understand and remember simple instructions and make simple work-related decisions; markedly limited in her abilities to maintain regular attendance and be punctual, to complete a normal workday and workweek without interruptions from symptoms, to perform at a consistent pace without an unreasonable number and length of rest

periods, to sustain an ordinary routine without special supervision, to respond to changes in a work setting, and work in coordination with others; and extreme limitations her ability to maintain attention and concentration for extended periods. Dr. Ahmed reported that plaintiff experienced three episodes of decompensation within the past year that lasted at least two weeks. Dr. Ahmed opined that plaintiff had a substantial loss of ability to understand, remember, and carry out simple instructions; to make judgments that are commensurate with the functions of unskilled work; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. Dr. Ahmed reported that plaintiff had experienced the severity of such reported limitations for two years. Dr. Ahmed reported plaintiff's GAF score to be 60. (Tr. 375-78.)

On June 21, 2011, Dr. Ahmed decreased plaintiff's dosage of Trazodone because of headaches. Plaintiff reported at that time that her husband recently obtained a job, which helped their finances. (Tr. 415-17.)

Plaintiff returned to Dr. Ahmed on September 1, 2011, and reported that she was doing okay. Plaintiff reported that her husband continued to work and that they were able to afford the home they rented. Plaintiff reported that she stayed home a lot and was bored. Dr. Ahmed continued with his diagnoses and instructed plaintiff to continue with her medications. (Tr. 394-96.)

## IV.  The ALJ's Decision

The ALJ found plaintiff to meet the insured status requirements of the Social Security Act through December 31, 2010.  The ALJ found that plaintiff had not engaged in substantial gainful activity since September 15, 2009.  The ALJ found plaintiff's degenerative disc disease, major depressive disorder, and GAD to constitute severe impairments, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ found plaintiff to have the RFC to perform light work[7] and to understand, remember, and carry out at least simple instructions and non-detailed tasks.  The ALJ determined that plaintiff's RFC did not preclude performance of her past relevant work as a cook, deli/bakery worker, cashier, factory worker, and house cleaner.  In the alternative, the ALJ found vocational expert testimony to support a finding that plaintiff could perform other work existing in significant numbers in the national economy, and specifically, assembly worker and dishwasher/kitchen helper.  The ALJ thus found that plaintiff was not under a disability from September 15, 2009, through the date of the decision.  (Tr. 10-23.)

---

[7]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal

## V.  Discussion

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove that she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is

---

of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§  404.1567(b), 416.967(b).

working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007)

(internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may

still be supported by substantial evidence on the record as a whole. *Pearsall*, 274 F.3d at 1217 (*citing Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

A.      <u>Medical Opinion Evidence</u>

Plaintiff contends that the ALJ's determination as to her mental RFC is not supported by substantial evidence on the record as a whole inasmuch as the ALJ improperly discounted the opinion evidence obtained from plaintiff's treating psychiatrist, Dr. Ahmed.

In evaluating opinion evidence, the Regulations require the ALJ to explain in the decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).[8] The Regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. §§ 404.1527(d)(2),

---

[8] Citations to 20 C.F.R. §§ 404.1527 and 416.927 are to the 2011 version of the Regulations, which were in effect at the time the ALJ rendered the final decision in this cause. This Regulation's most recent amendment, effective March 26, 2012, reorganizes the subparagraphs relevant to this discussion but does not otherwise change the substance therein.

416.927(d)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.; see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

However, a medical source's opinion that an applicant is unable to work involves an issue reserved for the Commissioner and is not the type of opinion which the Commissioner must credit. *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such factors include the length of the treatment relationship and the frequency of examination, the nature

and extent of the treatment relationship, whether the treating physician provides support for his findings, whether other evidence in the record is consistent with the treating physician's findings, and the treating physician's area of specialty. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Regulations further provide that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In her written decision here, the ALJ determined to accord little weight to the opinions expressed in Dr. Ahmed's Mental MSSs, noting Dr. Ahmed's opinions therein to be inconsistent with his own treatment records and other longitudinal evidence of record. The ALJ also found that Dr. Ahmed's opinions were based primarily on plaintiff's subjective complaints, determined by the ALJ not to be credible.[9] Because these reasons are supported by substantial evidence on the record as a whole, the ALJ did not err in discounting the opinions expressed in Dr. Ahmed's Mental MSSs.

---

[9] Although plaintiff does not challenge the ALJ's credibility determination here, a review of the ALJ's decision nevertheless shows that, in a manner consistent with and as required by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted), the ALJ considered the subjective allegations of plaintiff's disabling symptoms on the basis of the entire record before her and set out numerous inconsistencies detracting from the credibility of such allegations. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).

The ALJ noted Dr. Ahmed's opinions to be inconsistent with his own treatment records. "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue,* 578 F.3d 838, 842 (8th Cir. 2009); *see also Hacker v. Barnhart,* 459 F.3d 934, 937 (8th Cir. 2006). Here, Dr. Ahmed's treatment notes show plaintiff to have experienced intermittent symptoms of anxiety and depression, ranging between feeling good or okay at times and feeling anxious and down at other times. The treatment notes show plaintiff's symptoms to be episodic in nature, triggered by stress over finances. Notably, no observations are made by Dr. Ahmed in any of his treatment notes showing plaintiff to experience the significant and debilitating limitations as set out in both his November 2010 and June 2011 MSSs. Where the limitations set out in a treating physician's assessment "stand alone" and were "never mentioned in [the physician's] numerous records or treatment" nor supported by "any objective testing or reasoning," the ALJ's decision to discount the treating physician's statement is not error. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Because none of Dr. Ahmed's records note any such limitations, the ALJ did not err in according less than controlling weight to Dr. Ahmed's opinions. *Charles v. Barnhart*, 375 F.3d 777, 784 (8th Cir. 2004).

The ALJ also noted Dr. Ahmed's opinions to be inconsistent with other longitudinal evidence of record. Specifically, the ALJ noted that plaintiff never required any psychiatric hospitalizations. The ALJ also noted there to be no evidence that plaintiff experienced severe limitations on account of severe psychiatric or psychological symptoms and that Dr. Ahmed's opinions of such appeared to be based on plaintiff's subjective reports. Where a treating physician's opinions are largely based on a claimant's subjective complaints rather than on objective findings, an ALJ does not err in giving such opinions less than controlling weight. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012). Indeed, the ALJ noted the record to show that plaintiff works in her yard, rides her bike, keeps busy with her young granddaughter, goes shopping, maintains her home, plays card games and completes crossword puzzles, and goes out to eat. *See Tellez v. Barnhart*, 403 F.3d 953, 956 (8th Cir. 2005) (substantial evidence supported ALJ's decision to discount physician's opinion given that claimant's actual behavior was clearly at odds with limitations described by the medical source); *Pearsall*, 274 F.3d at 1218 (medical record did not support alleged limitations caused by mental impairment where claimant's activities were not indicative of intense fear of crowds or people). In addition, the ALJ noted plaintiff's mental status examinations to consistently show plaintiff to have normal speech, behavior, judgment, and thought content; and that plaintiff's medical

providers for her physical impairments consistently observed plaintiff to engage in normal behavior and demonstrate normal mood and affect.

A review of the ALJ's decision shows the ALJ to have evaluated all of the evidence of record and to have provided good reasons for the weight accorded to Dr. Ahmed's opinions expressed in his November 2010 and June 2011 Mental MSSs. Where, as here, there are conflicts in the medical evidence, it is the duty of the Commissioner to resolve such conflicts. *Renstrom*, 680 F.3d at 1065; *Spradling v. Chater*, 126 F.3d 1072, 1075 (8th Cir. 1997); *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). For the reasons set out above, substantial evidence on the record as whole supports the ALJ's determination to accord little weight to Dr. Ahmed's opinion evidence and to not include the limitations as opined by Dr. Ahmed in plaintiff's RFC.

B.     Concentration, Persistence, or Pace

At Step 3 of the sequential analysis, the ALJ found that plaintiff's severe impairments, either singly or in combination, did not meet or medically equal a listed impairment. As part of this analysis, the ALJ discussed plaintiff's mental impairments and determined that, when considered with evidence of plaintiff's pain, it was reasonable to expect such impairments to cause moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 13-14.) Plaintiff claims that

the ALJ erred at Step 4 of the analysis by failing to include these limitations in the RFC determination and in the hypothetical question posed to the vocational expert.

In *Lacroix v. Barnhart*, 465 F.3d 881 (8th Cir. 2006), the claimant made a similar argument, that is, that the ALJ's Step 4 RFC analysis was inconsistent with the earlier determination made at Step 2 that plaintiff's impairments significantly limited her functional abilities. The Eighth Circuit soundly rejected this argument inasmuch as "[e]ach step in the disability determination entails a separate analysis and legal standard." *Id.* at 888 n.3. Because plaintiff bases her argument on a contention that the ALJ's analysis as to her mental impairments is inconsistent between Step 3 and Step 4 of the sequential analysis, her argument must be rejected on the basis of the Eighth Circuit's reasoning in *Lacroix*.

C.    Ability to Perform Work

In her written decision, the ALJ found plaintiff able to perform her past relevant work as a cook, deli/bakery worker, cashier, factory production worker, and house cleaner. Plaintiff challenges this finding, arguing that a number of such jobs have reasoning skills and/or exertional requirements exceeding those identified in plaintiff's RFC. Plaintiff also argues that the ALJ failed to undergo the required function-by-function analysis to determine whether plaintiff could perform the demands of her past relevant work when compared with her RFC. In her reply brief, plaintiff further argues that the ALJ failed to investigate whether

plaintiff's work as a house cleaner and factory worker were performed at the level of substantial gainful activity inasmuch as the evidence of record fails to establish such level. Because these alleged errors committed by the ALJ at Step 4 of the sequential analysis were harmless, at most, remand is not required and plaintiff's argument otherwise must fail.

At Step 4 of the sequential analysis, an ALJ compares a claimant's RFC "with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the ALJ determines the claimant can perform her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). In making this determination, the ALJ must fully investigate and make explicit findings as to the physical and mental demands of the claimant's past relevant work and compare that with what the claimant is capable of doing. *Young v. Astrue*, 702 F.3d 489, 491 (8th Cir. 2013); *Nimick v. Secretary of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989). *See also Groeper v. Sullivan*, 932 F.2d 1234, 1238–39 (8th Cir. 1991). An ALJ satisfies her duty to examine the specific demands of a claimant's past relevant work by referring to the job descriptions in the DOT that are associated with such past work. *Young*, 702 F.3d at 491-92.

With each of plaintiff's past relevant jobs, the ALJ here expressly referred to the DOT in her decision thereby satisfying her duty to examine the demands of

plaintiff's past relevant work.  Assuming *arguendo* that plaintiff's past work as a

house cleaner and factory worker were not performed at levels commensurate with

substantial gainful activity, the ALJ nevertheless referred to the DOT in relation to

plaintiff's other past relevant work as a cook, deli/bakery worker, and cashier.  As

noted by plaintiff, however, the reasoning skills required by such work as set out in

the DOT may be inconsistent with plaintiff's limitation to unskilled work involving

non-detailed tasks.

> The DOT lists a specific vocational preparation (SVP) time for each
> described occupation.  Using the skill level definitions in 20 CFR
> 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2;
> semi-skilled work corresponds to an SVP of 3-4; and skilled work
> corresponds to an SVP of 5-9 in the DOT.

Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *3 (Soc. Sec. Admin.
Dec. 4, 2000).

In determining at Step 4 that plaintiff could perform her past relevant work as a

cook, deli/bakery worker, and cashier, the ALJ identified DOT numbers with SVP

levels of 6, 6, and 3, respectively.  (Tr. 22.)  On their face, such jobs are

incompatible with plaintiff's RFC limitation to unskilled work.  SSR 00-4p, 2000

WL 1898704, at *3.  "Although there may be a reason for classifying an

occupation's skill level differently than in the DOT, the regulatory definitions of

skill levels are controlling."  *Id.*  As such, it cannot be said that the ALJ's

determination at Step 4 of the sequential analysis that plaintiff could perform her

past relevant work was supported by substantial evidence.

However, the ALJ continued in her analysis and alternatively made a Step 5

finding that plaintiff could perform other work as it exists in significant numbers in

the national economy, and specifically, assembly worker and dishwasher/kitchen

helper. (Tr. 22.) For the following reasons, substantial evidence on the record as a

whole supports the ALJ's alternative finding at Step 5 that plaintiff could perform

other work in the national economy as an assembly worker. As such, the

challenged errors committed by the ALJ at Step 4 were harmless and do not

require remand. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (declining

to remand for alleged error in opinion when error "had no bearing on the

outcome") (internal quotation marks omitted).

With respect to the job of dishwasher/kitchen helper, the vocational expert

testified, and the ALJ found, that plaintiff could perform such work as described in

the DOT at number 318.687-010. (*See* Tr. 550-51, 22.) As noted by the plaintiff,

however, the DOT describes this work as requiring medium strength. DOT

318.687-010, 1991 WL 672755. Because the ALJ limited plaintiff to light work,

the identification of this job requiring medium strength appears on its face to be

incompatible with plaintiff's RFC. However, the vocational expert also testified,

and the ALJ found, that plaintiff could perform work as an assembly worker as

described in the DOT at number 706.684-022.  (Tr. 550, 22.)  Such work is

performed at the light exertional level and requires reasoning at SVP level 2, which

corresponds with unskilled work.  DOT 706.684-022, 1991 WL 679050; SSR 00-

4p, 2000 WL 1898704, at *3.[10]  The vocational expert testified that 2,300 such jobs

existed in the St. Louis area and 350,000 nationally.  (Tr. 550.)  Because there is a

significant number of assembly worker jobs that plaintiff is capable of performing

with her RFC, the ALJ did not err in finding plaintiff able to perform this other

work as it exists in significant numbers in the national economy.  20 C.F.R. §§

404.1566(b), 416.966(b) ("Work exists in the national economy when there is a

significant number of jobs (in one or more occupations) having requirements

which you are able to meet[.]"); *Weiler v. Apfel*, 179 F.3d 1107, 1110-11 (8th Cir.

1999) (vocational expert's testimony that 32,000 positions existed nationwide in

occupation that could be performed by person with claimant's vocational factors

---

[10]  To the extent plaintiff argues that SVP level 2 reasoning as defined by the DOT continues to
be incompatible with unskilled work, plaintiff's exclusive reliance on the DOT as a definitive
authority on job requirements is misplaced.  *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997).
It is well established that definitions in the DOT "are simply generic job descriptions that offer
the approximate maximum requirements for each position, rather than their range."  *Wheeler v.
Apfel*, 224 F.3d 891, 897 (8th Cir. 2000) (internal quotation marks and citation omitted).  *See
also Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010); *Hillier v. Social Security Admin.,* 486
F.3d 359, 366–67 (8th Cir. 2007); *Hall*, 109 F.3d at 1259.  "[N]ot all of the jobs in every
category have requirements identical to or as rigorous as those listed in the DOT."  *Wheeler*, 224
F.3d at 897.  Indeed, the DOT itself "cautions that its descriptions may not coincide in every
respect with the content of jobs as performed in particular establishments or at certain localities."
*Id.*

and RFC constituted substantial evidence that a significant number of jobs existed in the economy that claimant could perform).

Accordingly, to the extent the ALJ committed any error claimed by plaintiff at Step 4 of the sequential analysis, such error(s) was harmless inasmuch as the ALJ's alternative finding at Step 5 that plaintiff could perform other work in the national economy was supported by substantial evidence. While this portion of the ALJ's decision is not a model of clarity, it demonstrates merely a deficiency in opinion-writing technique that had no bearing on the result. *Hepp*, 511 F.3d at 806. As such, remand is not warranted.

## VI. Conclusion

For the reasons set out above on the claims raised by plaintiff on this appeal, the ALJ's determination that plaintiff was not disabled from September 15, 2009, through the date of the decision is supported by substantial evidence on the record as a whole, and plaintiff's claims of error should be denied. Inasmuch as there is substantial evidence to support the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992).

Therefore,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is affirmed, and plaintiff's Complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE


Dated this ___31st___ day of January 2014.